UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK



FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ OCT 11 2011 ★

BROOKLYN OFFICE

MAUSKOPF J.
GO, M.J.

---

EDDY VOLTAIRE,

          Plaintiff,

          v.

HOUSLANGER & ASSOCIATES, P.L.L.C.,
          Defendant.

COMPLAINT

JURY TRIAL DEMANDED

---

## INTRODUCTION

1. This is an action for money damages and declaratory judgment, brought by an individual consumer for Defendant's violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* (hereinafter "FDCPA").

2. Specifically, this action relates to Defendant's illegal and abusive attempts to collect a debt that Plaintiff does not owe.

## JURISDICTION AND VENUE

3. Jurisdiction is conferred by 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337.

4. Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202.

5. Venue in this District is proper because the acts and transactions that give rise to this action occurred in this district.

## PARTIES

6. Plaintiff, Eddy Voltaire is a natural person who has resided at all relevant times in St. Albans, New York.

7. Mr. Voltaire is a consumer as defined by 15 U.S.C. § 1692a(3).

8. Defendant Houslanger & Associates, P.L.L.C. (hereinafter "Houslanger") is a New York professional limited liability company engaged in the collection of debts in New

- 1 -

York State with a principal place of business at 372 New York Avenue, Huntington, NY 11743.

9.     Defendant Houslanger's principal purpose is the collection of debts, and it regularly attempts to collect debts alleged to be due another.

10.     Houslanger is a debt collector as defined by 15 U.S.C. § 1692a(6).

## FACTS

11.     On or about April 14, 2011, Mr. Voltaire attempted to access monies kept in his Bank of America checking account only to find that his account had been restrained.

12.     Bank of America charged Mr. Voltaire a processing fee of $100.00 in connection with the restraint.

13.     Mr. Voltaire immediately contacted his bank and learned that his account had been restrained on the basis of a judgment obtained by Houslanger in an action titled Palisades Collection, L.L.C. A/P/O AT&T Wireless v. Voltaire (Queens Civil Court, Index: 1415/05) ("the State Court Action").     This was the first time that Mr. Voltaire learned of the existence of the State Court Action and the judgment obtained against him.

14.     Mr. Voltaire does not owe the debt underlying the suit upon which judgment against him was entered, and furthermore, he has never been a customer of AT&T.

15.     On or about April 18, 2011, Mr. Voltaire called Houslanger and spoke with a Ms Garcia.

16.     Mr. Voltaire informed Ms. Garcia that he did not have then, nor had he ever had, a business relationship with AT&T, and that he did not owe any such debt.

17.     Ms. Garcia responded by telling Mr. Voltaire it was his responsibility to prove that the debt wasn't his. Ms. Garcia provided Mr. Voltaire with the name of the Houslanger

associate handling Mr. Voltaire case, Steve Zubernick.

18.     At that time, Mr. Voltaire requested that Ms. Garcia mail him a copy of the paperwork regarding the alleged debt.

19.     On or about April 19, 2011, Mr. Voltaire called Houslanger and spoke to Steve Zubernick who, like Ms. Garcia, stated that it was Mr. Voltaire's responsibility to provide proof that he didn't owe the debt.

20.     Immediately after speaking with Mr. Zubernick, Mr. Voltaire called AT&T and spoke to AT&T representative Jarrett Jackson, who confirmed, based on Mr. Voltaire's social security number and contact information, that he did not have any account or business relationship with AT&T.

21.     Mr. Jackson indicated that, in coming to this conclusion, he had checked AT&T's historical and current records.

22.     With Mr. Jackson still on the phone, Mr. Voltaire telephoned Houslanger and conferenced in Mr. Zubernick.

23.     The AT&T representative, Mr. Jackson, then orally confirmed to Mr. Zubernick that the account in question did not belong to Mr. Voltaire, *this time by inputting account information provided by Mr. Zubernick himself.*

24.     Instead of acknowledging the information provided by AT&T and taking steps to redress Houslanger's error, Mr. Zubernick hung up.

25.     Despite being provided with confirmation from AT&T that the debt was not his, Houslanger continued to impound Mr. Voltaire's bank account.

26.     On or about April 26, 2011, Mr. Voltaire again called AT&T in an attempt resolve the matter, and spoke with an AT&T representative, Mike Fetsco.

- 3 -

27.     Mr. Voltaire explained the situation, and Mr. Fetsco confirmed (again) that Mr. Voltaire did not owe any monies to AT&T and that Mr. Voltaire had never had an AT&T account.

28.     Mr. Voltaire then initiated yet another 3-way conference call, with Mr. Zubernick on the call for Houslanger.

29.     During the call, the AT&T representative, Mr. Fetsco confirmed to Mr. Zubernick that Mr. Voltaire did not currently and had not in the past ever owed money to AT&T and that Mr. Voltaire never had an account with AT&T.

30.     Mr. Zubernick insisted on "written proof" that the account did not belong to Mr. Voltaire.  Mr. Fetsco explained that because Mr. Voltaire had never been a customer of AT&T, AT&T could not send any correspondence regarding his lack of indebtedness.

31.     Despite twice being provided with confirmation from AT&T that Mr. Voltaire did not owe the debt that it sought to collect, Houslanger continued to impound Mr. Voltaire's bank account.

32.     On or about May 20, 2011, Mr. Voltaire attempted yet again to resolve this matter by speaking to AT&T and Houslanger.

33.     As he had done twice before, Mr. Voltaire called AT&T, and spoke, this time, with representative Art Marquez.  Mr. Voltaire then conferenced in Houslanger, and had Mr. Marquez confirm to a Mr. Matt Blake (who Mr. Zubernick had previously indicated was Mr. Zubernick's supervisor), that based on social security number and contact information, Mr. Voltaire did not owe any monies to AT&T now or in the past, and had never had business relationship with the company.

34.     Mr. Blake took the same position as Mr. Zubernick.  In response, the AT&T

- 4 -

representative Marquez transferred the call to Mr. Marquez's supervisor, who spoke to Matt Blake and confirmed yet again that Mr. Voltaire had never been an AT&T customer.

35.   As previous AT&T representatives had stated, the supervisor reiterated that because Mr. Voltaire had never had a relationship with AT&T, AT&T could not send any correspondence regarding his lack of indebtedness.

36.   As with previous three-way teleconferences, the Houslanger supervisor on the call, prematurely terminated the call by hanging up the phone rather than acknowledging and accepting the validity of the information being conveyed by the original creditor.

37.   Mr. Voltaire subsequently sent a letter to Houslanger, dated June 13, 2011, reiterating that he did not owe the debt; recounting the various instances on which AT&T had confirmed to Houslanger that he did not owe the debt; requesting validation of the debt; and asking Houslanger to provide copies of the paperwork (account statements, contract, payment history, etc.) for the account.

38.   Hauslanger did not respond to Mr. Voltaire's letter.

39.   Unable to resolve the matter with Houslanger despite Hauslanger's knowledge that the suit it had filed was utterly frivolous, Mr. Voltaire, acting *pro se*, filed an Order to Show Cause on July 14, 2011, seeking to vacate the judgment entered on behalf of Palisades Collection, L.L.C.

40.   Mr. Voltaire's affidavit in support of the Order to Show Cause, as well as his sworn proposed answer recounted in some detail his attempts to resolve this matter with Houslanger, including the numerous three-way telephone conferences with AT&T.

41.   At the hearing for the Order to Show Cause, held on July 26, 2011, Houslanger's attorney continued to try and collect, asking Mr. Voltaire if he would like to settle the

- 5 -

matter by paying some or all of the amount allegedly owed.

42.     Mr. Voltaire justifiably refused to settle, and Hauslanger's attorney pressed forward with the case.

43.     The Court, by Order dated July 26, 2011 vacated the default, lifted the bank restraints, and calendared the case for trial.

44.     On the trial date, August 9, 2011, the Hon. Timothy J. Dufficy dismissed the State Court Action with prejudice.

## CAUSE OF ACTION

**Violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.***

45.     Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

46.     By undertaking the above referenced collection activities, Defendant Houslanger violated 15 U.S.C. § 1692 *et seq.* Specifically and without limitation, Defendant Houslanger violated the FDCPA by:

(a)     falsely representing the character, amount and legal status of Mr. Voltaire's purported debt in violation of §§ 1692e, 1692e(2)(B), 1692e(10) and 1692f, and 1692f(1);

(b)     threatening, attempting and/or actually taking collection activity against Mr. Voltaire with regard to a debt that he did not owe, in violation of 15 U.S.C. §§1692e, 1692e(2); 1692e(5); 1692e(10); 1692f; and 1692f(1).

(c)     taking legal action against Mr. Voltaire when it knew or should have known that there was no factual basis for its action, without conducting the minimum due diligence required under New York law regarding frivolous

- 6 -

pleadings, in violation of §§ 1692e, 1692e(2), 1692e(5), and 1692e(10),
1692f, and 1692f(1).

47.     Although it is not required under the statute, Plaintiff notes in this regard that
Defendant took said unlawful actions despite having been repeatedly informed by the
purported original creditor that no money was owed.

48.     Indeed, at least from the time of its first conversation with the original creditor (via
three way conference call on or about April 19, Hauslanger lacked any good faith basis for
proceeding with its collection actions against Mr. Voltaire.

49.     Hauslanger's actions, as described herein, are not an isolated instance of
misconduct. Rather, Hauslanger routinely fails to perform due diligence on the facts
underlying its Palisades Collection, LLC cases prior to taking collection action, even when
informed by the consumer that the debt is not valid and that the consumer never had an
account with the original creditor.

50.     Hauslanger's policy and practice in such instances is to press forward with the case
so long as the consumer remains *pro se*, knowing that many consumers will lack the ability
to mount a meaningful and effective challenge even when service was improper, there is
no substantive basis for the lawsuit and Houslanger, upon information and belief, lacks any
supporting paperwork whatsoever regarding the purported debt.

51.     As a result of these violations of the FDCPA, Mr. Voltaire has suffered actual
damages, including, without limitation:

    a.      stress;

    b.      aggravation;

    c.      loss of sleep,

- 7 -

d.    loss of appetite;

e.    anxiety;

f.    nervousness;

g.    emotional distress;

h.    fear;

i.    worry and loss of happiness;

j.    loss of concentration;

k.    irritability;

l.    embarrassment;

m.    humiliation;

n.    intimidation,

o.    loss of the tranquility;

p.    indignation;

q.    pain and suffering; and

r.    bank processing fees levied on his account by Bank of America due to
      Houslanger's unlawful impound of Mr. Voltaire's bank account.

s.    lost income;

t.    transportation costs in connection with repeated trips to and from Kings
      County civil court;

u.    legal fees.

52.    As a result of these violations, Mr. Voltaire is entitled to statutory damages of up to

$1,000.00, actual damages, and attorney's fees and costs.

       **WHEREFORE** plaintiff respectfully requests that this Court award:

(a)    Declaratory Judgment that Defendant Houslanger's conduct violated the
       FDCPA;

(b)    Actual damages;

(c)    Statutory damages;

(d)    Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k; and

(e)    Such other and further relief as law or equity may provide.


## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by

jury.

Dated: October 5, 2011
        White Plains, New York

                                        Respectfully Submitted,

                                        Daniel A. Schlanger, Esq.
                                        Attorney for Plaintiff
                                        Schlanger & Schlanger, L.L.P.
                                        1025 Westchester Ave., Suite 108
                                        White Plains, New York 10604
                                        Telephone: 914-946-1981, ext. 101
                                        Facsimile: 914-946-2930
                                        Email: daniel@schlangerlegal.com

- 9 -